IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

WENDY WHITTINGTON,
On behalf of herself and other current and
former employees similarly situated,

                         Plaintiffs,                    Action No. 08:10–CV–425—AW

v.

WASHINGTON SUBURBAN SANITARY,

                        Defendants.

## MEMORANDUM OPINION

Pending before the Court is Defendant Washington Suburban Sanitary Commission's ("WSSC") Motion to Dismiss or in the Alternative, Motion for Summary Judgment. (Doc. No. 5). Plaintiff, Wendy Whittington, has filed a motion summary judgment in this matter. (Doc. No. 11). Plaintiff has also filed a Motion for Leave to File Out of Time (Doc. No. 22). Each of these Motions will be addressed *seriatim*.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In this suit, Plaintiff, Wendy Whittington, alleges that her current employer, Defendant Washington Suburban Sanitary Commission, violated several federal and state laws during the course of Plaintiff's employment with the Commission. Plaintiff filed suit in this Court on February 22, 2010. (Doc. No. 1). In her Complaint, Plaintiff alleges eight counts against Defendant, including Violation of the Fair Labor Standards Act (FLSA), §201 (Count I); Violation of the Maryland Wage and Hour Law (Count II); Violation of the Maryland Wage Payment Act (Count III); Violation of FLSA §207 (Count IV); Violation of the Americans with Disabilities Act (Count V); Violation of ADEA (Count VI); Violation of Maryland Fair Employment Practices Act, Article 49B §16 (a)(1-2) for Age and Disability Discrimination

(Count VII); Violation of Maryland Fair Employment Practices Act, Article 49B §16 (a)(1-2)) for Retaliation (Count VIII).

The Maryland legislature established the WSSC under Article 29 of the Annotated Code of Maryland. The WSSC provides water and wastewater services to Montgomery and Prince George's Counties. According to Defendant, the WSSC has an Acquisition Office "which operates a centralized purchasing system." The Acquisitions Office "handles all tasks related to the purchase and procurement of the equipment, materials, supplies, and contractual services that WSSC requires in connection with the construction and maintenance of its water and wastewater systems." (Doc. No. 5-2, at 3).

Plaintiff has worked at the WSSC for twenty-nine years, and she continues to work at the WSSC as a Grade 17 Acquisition Consultant in WSCC's Acquisitions Office, in which position she is responsible for processing requisitions and other procurement related work. (Doc. No. 10, at 2). Before she began in her current position, Plaintiff was a Procurement Consultant II. In this position, she was classified as a non-exempt employee and paid overtime, for each hour over forty hours that she worked each week.

According to Plaintiff, in March 2008, Plaintiff and other procurement consultants had their titled changed to Acquisition Consultants. As a result of this change, they were re-classified as exempt employees and hence, excluded from the Fair Labor Standard Act requirement that they receive payment for working overtime. Plaintiff avers that despite the change in her job title, she has the same job responsibilities that she had before her title changed. (Doc. No. 10, at 2-3)("She and other similarly situated acquisition consultants and procurement staffers do not engage in management, do not direct the work of two or more employees, do not have authority to hire or promote employees and do not perform work directly related to the

management or general business operations of WSSC."). Plaintiff avers that Defendant failed to pay her and other similarly situated acquisition consultants overtime wages for time that they worked over forty hours, after their positions were changed in March 2008. *Id.* at 3. Plaintiff avers that the job that she performed at WSSC was merely clerical, and in the duties that she performs in her current position at WSSC (which includes the duty to prepare purchase order data sheets), she does not have the authority to bind the Commission.

In 2007, Plaintiff began reporting to James Weldon, Senior Acquisition Consultant. Plaintiff states that Weldon gave her a heavy workload, which caused her to experience health problems in 2007. *Id.* at 6. According to plaintiff, she has to work twelve to thirteen hours a week to keep up with her work, which has caused her blood pressure to drastically increase from its normal level.

Plaintiff also alleges that she faced harassment because of her age and as retaliation for engaging in protected speech. Weldon, who was twenty-six years old, told plaintiff that "she could not accept his supervision and informed her that she was the age of his mother. During one holiday season, Weldon gave her a card congratulating her on being one Christmas closer to retirement." *Id.* at 6-7. Plaintiff requested that Weldon stop commenting about her age. Weldon and Plaintiff continued to endure tension in their working relationship, resulting in Plaintiff asking Weldon to attend mediation, which Weldon refused.

Plaintiff avers that prior to March 2008, she was required to work overtime on several occasions, and WSSC compensated her for the overtime hours that she worked. However, in late February/early March of 2008, Plaintiff avers that Defendant informed her that she would not be compensated for the overtime work that she had done. Accordingly, Plaintiff alleges that she

has not been paid for the sixteen hours of overtime that she worked in late February/early March 2008.

Plaintiff wrote a letter to Thomas Laboon on March 3, 2008. In her letter, she complained about the harassment, threats, and excessive work that she was enduring on her job. That same week, on March 7, 2008, Plaintiff wrote a letter to Rudolph Chow, the Deputy General Manager of WSSC, in which she discussed the discrimination, retaliation, and excessive work that she was enduring. Plaintiff avers that no action was taken in response to her complaints.

Subsequently, in March 2008, Plaintiff received a diagnosis that she was suffering from anxiety, hypertension, and hyperlilidemia. Her doctor wrote her a letter reflecting the diagnosis. When she showed this letter to her WSSC supervisors, they allegedly involuntarily removed her from her position. Plaintiff avers that "she was off work for approximately five months beginning in March 7, 2008, and she was forced to use approximately 700 hours in sick and annual leave." *Id.* at 8.

The instant suit addresses these factual allegations. Defendant moves to dismiss Counts I-V of Plaintiff's Complaint. Plaintiff moves for summary judgment on Counts I, II, and IV of her Complaint. The Court will address these motions herein.

## II. STANDARD OF REVIEW

Defendants in FLSA cases have the burden to "prove by clear and convincing evidence that an employee qualifies for exemption." *Shockley v. City of Newport News,* 997 F.2d 18, 21 (4th Cir.1993). In making this showing, "[t]he employer has the burden of establishing by affirmative evidence all the necessary requirements of the exemption." *Dalheim v. KDFW-TV,* 706 F.Supp. 493, 501 (N.D.Tex.1988), *aff'd,* 918 F.2d 1220 (5th Cir.1990); *Clark v. J.M. Benson*

*Co.,* 789 F.2d 282, 285-86 (4th Cir.1986). Exemptions from the FLSA's overtime pay requirements are "narrowly construed." *Walton v. Greenbrier Ford, Inc.,* 370 F.3d 446, 450 (4th Cir.2004)(citing *Auer v. Robbins,* 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)); *Shockley,* 997 F.2d at 24 ("Courts construe exemptions to the FLSA narrowly 'in order to further Congress' goal of providing broad federal employee protection.' " (citation omitted)).

### a. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing,'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

### b. Motion for Summary Judgment

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

#### a. Plaintiff's Motion to File Reply Out of Time

Plaintiff has moved to file her reply out of time. (Doc. No. 22). Her reply was due on July 6, 2010, and on July 7, Plaintiff filed the motion requesting six additional days to file her reply. Federal Rule of Civil Procedure 6(b)(1)(B), states, "When an act may or must be done

within a specified time, the Court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect." Counsel for Plaintiff informs the Court he was out of town for the holidays, and that his mother-in-law was injured on the evening of July 5, 2010. Moreover, his flight was delayed on July 6, 2010, causing counsel not to return from his destination until late on July 6. Defendant opposes Plaintiff's motion on the grounds that Plaintiff's reason for filing an untimely reply does not constitute excusable neglect. (Doc. No. 24). The Court finds that the reasons proffered by Plaintiff do in fact constitute excusable neglect, and the Court will **GRANT** Plaintiff's Motion.

### b. Fair Labor Standards Act Violations (Count I and IV)

Plaintiff has brought a collective action pursuant to 29 U.S.C. §216(b), as well as a claim for individual relief under FLSA. Pursuant to 29 U.S.C.§207 (a)(1)), "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Certain exception are provided to the requirement in §207 (a)(1) that employers provide overtime compensation for their employees for a workweek longer than forty hours. Pursuant to 29 U.SC. §213 to the Fair Labor Standards Act, "any employee employed in a bona fide executive, administrative, or professional capacity" is not subject to the requirement that they receive overtime compensation for workweeks longer than forty hours. As Defendants aptly assert, position titles are not dispositive for the determination of whether an employee is exempt from the FLSA requirements. However, defendants offer the following definition from In *Bertrand v. The*

*Children's Home*, 489 F. Supp. 2d 516, 520 (D. Md. 2007), the Court noted the *Cooke v. General Dynamics Corporation*, 993 F. Supp. 56, 61 (D. Conn. 1997) observation that "[w]hether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description.") 29 C.F.R. §541.200 provides that,

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
>> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>>
>> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>>
>> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

Defendant alleges Plaintiff is an exempt employee under the FLSA for two reasons:

1) She satisfies the salary level and salary basis tests for the administrative exemption; and

2) She satisfies the job duties test for the administrative exemption.

Plaintiff does not contest Defendant's argument that she meets the salary level and salary basis test for the administrative exemption, and therefore, the Court will evaluate Defendant's argument that the Plaintiff satisfies the job duties test for the administrative exemption.

Defendant alleges that "[b]ecause she is a purchasing agent whose work directly relates to the general business operations of WSSC, and whose primary duties includes the exercise of discretion and independent judgment on matters of significance, Ms. Whittington is an administrative employee subject to exemption from the overtime provisions of the FLSA." (Doc. No. 5-2, at 7). As such, defendants aver that they are entitled to summary judgment on

both of the Plaintiff's FLSA counts.   29 C.F.R. §541.201(a), *et seq*. further illuminates how an employee can qualify for an administrative exemption, stating,

> a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly ***related to the management or general business operations*** of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
>
> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

Defendant points to several factual statements that Plaintiff makes in her complaint which Defendant believes support the argument that Plaintiff's work is directly related to the general business operations of the Commission.   As such, Defendant posits that Plaintiff is an exempt employee.   Defendant highlights the following factual statements from Plaintiff's complaint:

1) Plaintiff is currently employed as a Grade 17 Acquisition Consultant II, responsible for processing requisitions and other procurement related work. (Comp. ¶17)

2) Plaintiff was responsible for the full procurement cycle for purchasing chemicals at WSSC  This assignment alone was a full time task.  (Comp. ¶26)

3) As an Acquisition Consultant II, Plaintiff was required to complete the option years for other contracts, she was responsible for preparing packages for "PORC" Commission, "cost analysis, five year history," for resolving invoices and delivery problems, and for meeting with vendors and in-house users (Comp. ¶26)

4) Plaintiff developed new requirements for contracts for stainless steel repair clamps, manhole adjusting rings, Fire Hydrant Adaptors, Complete Fire Hydrants, etc. (Comp. ¶26)

Furthermore, Defendant avers that Plaintiff's "primary job-relate duty—the duty that predominates and defines her job—is to prepare, award, and administer WSSC's contracts and purchase orders for goods and services utilized by the Commission." (Doc. No. 5-2, at 11-12. According to Defendant, this task is directly related to the general business operations of the Commission. *Id.* at 12.

Defendant further argues that Plaintiff is an exempt employee because her primary duty as a purchasing agent involves the exercise of discretion and independent judgment on matters of significance, thus making her an exempt employee under FLSA's administrative exemption. *See* 29 C.F.R. 541.202(b). Moreover, Defendant directs the Court to an example mentioned in 29 C.F.R. §541.203 (f) which shows that "purchasing agents with authority to bind the company on significant purchases generally meet the duties requirements for the administrative exemption even if they must consult with top management officials when making a purchase commitment for raw materials in excess of the contemplated plant needs."

Plaintiff responds to Defendant's averments by alleging that she does not meet the test for the administrative exemption because despite the fact that he job title has changed, she has the same duties that she had when she was a non-exempt employee. (Doc. No. 10, at 9). Moreover, Plaintiff avers that her primary responsibilities are not directly related to the management or the general operations of the employer or the employer's customers. She avers that she "merely conveys information from the end user within her company to the bidder and does not participate in analyzing data which shapes company policy, proposing revisions to policy, or shaping the company's marketing strategy . . . ." (Doc. No. 10, at 11). Moreover, she

alleges that she does not exercise discretion or independent judgment in matters of significance. According to Plaintiff, "the end user in the agency tells her what products they need, and when the bidders respond to the solicitation she uses the standard procedure of the company to select the bidder who made the highest bid . . . . Ms. Whittington does not have the authority to bind the agency, can not [sic] deviate from established policies and procedures, and cannot negotiate and bind the agency on significant matters." (Doc. No. 10, at 12).

In *Betrand v.Children's Home*, the Court held that in order to meet the standard for demonstrating that the employee's work is "directly related to the management or general business operations," the defendant must show that the plaintiff "'engaged in activities such as running the business itself or determining its overall course,' not just in the 'day to day carrying out' of business affairs." 489 F. Supp. 2d at 520 (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002)).

Even without the benefit of discovery, the job duties which Plaintiff alleges that she engaged in clearly place her outside of the ambit of a non-exempt employee. Section 541.201(a) lists several categories of jobs which qualify for the administrative exemption of FLSA, and included in this list is work involving "purchasing" and "procurement." Although Plaintiff alleges that she has no discretion to approve the final solicitation, and she applied the "very specific WSSC guidelines for purchases of goods and services," the pleadings in this matter demonstrate that Plaintiff plays an instrumental role in developing the solicitations which Plaintiff's superiors ultimately approved. Just a few of Plaintiff's job responsibilities which demonstrate that Plaintiff's work is directly related to the management or general business operations are listed below:

- For purchases over $50,000, she receives a request for a purchase of from a particular department or end user, she then meets with the end user to get the specifics of their purchase and develops the solicitation using WSSC standard procedures. After she drafts the solicitation, she submits the solicitation to her group leader, Bobbie Tolston for review.

- Once proposals are submitted, she reviews the proposals, determines the lowest bid and prepares a bid tabulation sheet summarizing the bids which she then submits to her group leader and the end user for review and approval.

- When proposals are submitted to PORC, Ms. Whittington prepares a purchase order data sheet . . . . Once the purchase order data sheet is signed, it is sent back to Ms. Whittington's office in a sealed envelope.[1]

- Once Ms. Tolston opens the sealed envelope to verify that all members of PORC have signed the purchase order data sheet, Mrs. Whittington is then directed to sign the purchase order.[2]
- For purchases of $50,000 or less, Plaintiff must obtain the specifications from the end user. She then applies WSSC's policies, prepares a solicitation, and sends out the bid. When bidders respond, she applies WSSC's policies to determine the lowest bid, and then tells the end user who submitted a bid and what the bid was. She must brief the group leader on the progress of the bid.

Doc. No. 10.

Although Plaintiff may not have final decision making authority regarding the purchases that are made on behalf of WSSC, Plaintiff's works as an Acquisition Consultant II undoubtedly is directly related to the general business operations. From the factual allegations made in the pleadings regarding Plaintiff's job responsibilities, it appears as though Plaintiff plays an integral role in the procurement process, as only one person's approval is required to finalize the procurement process after leaving Plaintiff's hands. As such, the Court believes that Plaintiff's work does directly relate to general business operations.

---

[1] Plaintiff notes that she does not have authority to open this envelope, as it must be opened by Ms. Tolston.

[2] Plaintiff notes that her signature on the purchase order is merely a clerical function, "and only signifies that she is the point of contact to the outside vendor for the purchase order." (Doc. No. 10, at 4). Furthermore, she alleges that she does not have the authority to bind Defendant because of the process that requires approval from her superior before she can make a purchase on behalf of WSSC.

The Court must now determine whether Plaintiff's primary duties involve the exercise of discretion and independent judgment on matters of significance. Throughout Plaintiff's pleading, Plaintiff avers that she did not exercise discretion or independent judgment in her job as a Acquisitions Consultant. (Doc. No. 10, at 12)("The end user in the agency tells her what products they need, and when the bidders respond to the solicitation she uses the standard procedure of the company to select the bidder who made the highest bid."). Whether the employee has the authority to commit the employer in matters that have significant financial impact is one factor to consider determining whether the employee exercised independent judgment and discretion. Plaintiff avers that she did not have authority to bind the agency.

Defendant responds to Plaintiff's contention that she did not have the authority to bind the agency by directing the Court to *Colson v. Avnet*, 2010 U.S. Dist. LEXIS 12620 at *10, for the proposition that "an individual who prepares purchase orders and has the authority to bind the company on significant purchases generally meet[s] the duties requirements for the administrative exemption."

Although this is a close question, the Court finds that a genuine factual dispute exists as to how much discretion Plaintiff exercises in her position at WSSC. Specifically, the question remains as to whether the Plaintiff is able to bind the agency. Both parties have moved for summary judgment as to Count I and IV of this Complaint. Defendant alleges that because Ms. Whittington is exempt from the overtime provisions of FLSA, her collective action under 29 U.S.C. §216(b) must be dismissed. As the Court has found that there is a genuine dispute of fact as to whether Plaintiff is an exempt employee under FLSA, the Court cannot find as a matter of law that Plaintiff cannot represent claims in collective action against other similarly situated employees. As such there is a genuine factual dispute as to the amount of discretion that

Plaintiff's exercised, summary judgment is not appropriate as to Counts I and IV at this stage in the litigation, and the Court will **DENY** Summary Judgment as to both parties.

### c. Counts II -Violations of Maryland's Wage and Hour Law

The Maryland Wage and Hour Law (MWHL) is the state equivalent to FLSA. *Newell v. Runnels*, 407 Md. 578, 649 (2009). Defendants allege that because Plaintiff is an exempt employee under FLSA, she is also exempt under the Maryland Wage and Hour Law. As already discussed, there is genuine issue of fact as to whether Plaintiff is an exempt employee under FLSA. As equivalent exemptions for administrative employees exist in the Maryland Wage and Hour Law, the Court cannot find as a matter of law that the Plaintiff is an exempt employee under the Maryland Wage and Hour Law.

Defendants additionally move for summary judgment on Plaintiff's claim for violations of the Maryland Wage and Hour Law because they aver that government units such as WSSC are not "employers" under the MWHL, accordingly, Defendants aver that "the statute is inapplicable to public agencies such as WSSC and their employees." (Doc. No. 5-2, at 16). Defendants aptly cite *Koehlker v. Mayor and City Council of Cumberland*, 599 F. Supp. 2d 624, 639 (D. Md. 2009), for its holding that because "'employer' under Md.Code Ann., Lab. & Empl. § 3-401 is defined as a "person," which is in turn defined in Section 1-101(d) to exclude governmental units, the City is not subject to the MWHL." Plaintiffs respond to this argument by directing the Court to a recent decision from the Court of Appeals of Maryland, *Washington Suburban Sanitary Commission v. Phillips, et al.*, 413 Md. 606 (2010) for its holding that the WSSC is considered a "person." As this recent case conclusively held that the WSSC is a "person" for the purposes of Maryland Code, Article 49B, §42(a), the Court finds no reason to find that the WSSC is not a "person" for the purposes of the Maryland Wage and Hour Law. Therefore, the

Court will **DENY** Defendant's Motion for Summary Judgment on this claim. As the Court believes that there is a genuine issue of material fact about the Plaintiff's level of discretion under FLSA, the Court likewise believes that there is a genuine issue of fact about whether Plaintiff's duties would qualify her as a non-exempt employee under the Maryland Wage and Hour Law. Therefore, the Court will also **DENY** Plaintiff's Motion for Summary Judgment.

### d. Count III -Violation of the Maryland Wage Payment and Collection Law

Plaintiff has alleged that Defendant has violated the Maryland Wage Payment and Collection Law ("MWPCL"). However, Defendant argues that this law does not apply to the matter at bar, citing *Watkins v. Brown*, 173 F. Supp. 2d 409, 416 (D. Md. 2001) for the proposition that "the MWPLC was not intended to be the Maryland equivalent of the FLSA." Defendant also cites *McLaughlin v. Murphy*, 372 F.Supp. 2d 465, 474 (D.Md. 2004) for the proposition that "the MWPLC does not contain provisions regulating minimum wage and overtime; such provisions are contained in the Maryland Wage and Hour Law, which basically tracks the FLSA." Unlike the MMHL, which requires that "employers pay the applicable minimum wage to their employees, and . . . that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that the employee works during one workweek," the MWPLC regulates "the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Fiolo v. Frankel*, 373 Md. 501, 513-14. The Court finds that the Maryland Wage and Hour Law is the statute addressing Plaintiff's claims that Defendant has unlawfully withheld overtime wages from her. As the Maryland Wage Payment and Collection Law is inapplicable to this case, the Court will **GRANT** summary judgment to the Defendant as to this claim.

### e. Count V-Violations of the Americans with Disabilities Act

Defendant move for summary judgment on Count V of Plaintiff's Complaint, which alleges that Defendant violated Plaintiff's rights under the Americans with Disabilities Act (ADA). To prove a violation of the Americans with Disabilities Act, the Plaintiff must prove that he (1) has a disability; (2) he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination because of the disability. *A Society Without a Name for People Without a Home Millennium-Future-Present v. Commonwealth of Virginia*, 699 F. Supp. 2d 787, 799 (E.D. Va. 2010).

The term "disability" under the statute is defined as,

(1) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) A record of such an impairment; or

(3) Being regarded as having such an impairment.

29 CFR § 1630.2.

Defendant highlights the Fourth Circuit's holding that "the term 'disability' does not include temporary medical conditions . . . even if those conditions require extended leaves of absence from work.'" *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 199 (4th Cir. 1997). According to Defendants, "the Complaint does not allege that Ms. Whittington suffers from any disability of any kind. Indeed, the only references to Ms. Whittington's medical condition consist of the assertion that, at an unspecified time in 2007, 'she found her blood pressure was at dangerously high levels,' and that in March 2008, her physician found that she was suffering from anxiety, hypertension, and "hyperlilidemia."'" (Doc. No. 5-2, at 19).

The Court believes that Plaintiffs have adequately stated an ADA claim, as the disability complained us does fit within the category of constituting a "physical impairment" as it is defined under 29 CFR §1630.2 (h)(1) ("Physical or mental impairment means: Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."). Moreover, Plaintiff has alleged that she had a record of this impairment, demonstrated by her doctor's diagnosis. Finally, Plaintiff indicated that her impairments caused her to be "removed from work against her will," demonstrating that she may have been "regarded as" being disabled. (Doc. No. 1, at ¶34). Defendants aver that "Whittington was sent home from work in March 2008, not because WSSC mistakenly believed her to be disabled or unable to perform her job, but because she presented a doctor's note stating that she was medically unable to work at her current job, and because there were no other positions available at the time which involved less responsibility and fewer work hours." (Doc. No. 5-2, a5 22). The Court notes that Plaintiff does not have to prove that she was "regarded as" disabled, for the test to establish whether a plaintiff has a disability is a disjunctive test, requiring that only one of the elements are met in order to adequately allege that the plaintiff suffers from a disability. Even if Plaintiff has not adequately alleged that she was "regarded as" having a disability, Plaintiff has adequately alleged that she suffered from a disability that substantially limited a major activity, and Plaintiff has adequately alleged that she had a record of having this impairment. Defendant has moved for summary judgment on these claims, requesting that the Court find that Plaintiff is not disabled as a matter of law. Without the benefit of discovery, the Court believes that conclusively determining that Plaintiff did not suffer from a disability is

premature at this stage of the litigation. Therefore, the Court will **DENY** summary judgment to Defendant on Counts V Plaintiff's Complaint.

## CONCLUSION

An Order consistent with this Opinion will follow. The Court will proceed to issue a scheduling order in this matter**.**


Date:   March 28, 2011                                            /s/
                                                                    Alexander Williams, Jr.
                                                                    United States District Judge